IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDE WITHERS, | No. CIV S-05-1485-FCD-CMK-P |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| CLAUDE FINN, Warden | |
| Respondent. | |

Petitioner, a state prisoner proceeding with appointed counsel, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the August 28, 2003, denial of parole.  Pending before the court are petitioner's pro se amended petition for a writ of habeas corpus (Doc. 7), filed on December 29, 2005, petitioner's supplemental memorandum of points and authorities (Doc. 22), filed by counsel on November 11, 2006, respondent's answer (Doc. 24), filed on December 22, 2006, and petitioner's reply (Doc. 25), filed by counsel on January 22, 2007.

/ / /

/ / /

/ / /

# I. BACKGROUND

## A. Facts

The court accepts petitioner's statement of the relevant facts. In particular, petitioner recites the following summary of the facts of his commitment offense, as outlined by the Los Angeles County Superior Court on July 21, 2004, when it denied relief on petitioner's parole challenge claims:

> . . . On March 29, 1984, petitioner and crime partner Jackson arrived at the Cinema Hotel in Los Angeles, intending to rob Marlin Thomas of drugs and money. While Jackson remained in the car, petitioner forced his way into Thomas' room and confronted occupants Thomas, [Carolyn] Chambers, and Jean Mack with a loaded shotgun. Petitioner attempted to rob Thomas of his cocaine and money, but Thomas grabbed for petitioner's shotgun. During the ensuing struggle for the weapon, the gun went off striking Chambers in the face and killing her immediately. Petitioner and Jackson fled the scene and were subsequently arrested for the murder.

The state court outlined the following additional facts concerning petitioner's history:[1]

> Petitioner does not have [a] juvenile record, but has a criminal history as an adult. In 1971, petitioner was arrested for possession of marijuana in Illinois.[2] In 1982, he was arrested in Los Angeles for possession of a controlled substance, for which he received three years summary probation and ninety days in jail.
>
> Petitioner also reports a history of drug use prior to his incarceration. Petitioner dropped out of high school in the ninth grade, and started using drugs when he was sixteen. By the time of the commitment offense, petitioner was using marijuana, cocaine, and heroin.
>
> Since his incarceration, petitioner has received four 115 disciplinary violations for "serious" misconduct. His last 115 disciplinary violation occurred [in] 1996. Petitioner's achievements while incarcerated include: (1) obtaining his General Education Degree (GED); (2) completing his welding certification and 10,00[0] hours of welding experience; and (3) demonstrating perfect attendance in Alcoholics Anonymous, where he has

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id.

[2] Petitioner adds that this arrest resulted in a conviction, but does not specify the sentence he received.

served as a chairperson. Petitioner's psychological report indicates he poses a normal degree of risk whether in or out of prison and his prognosis for community living is good.

B. **Procedural History**

Petitioner pleaded guilty to murder in the second degree and, as outlined in the abstract of judgment, was sentenced on April 17, 1986, to "a total of 17 yrs. to LIFE" in state prison. Petitioner became eligible for parole on May 15, 1995. Petitioner was initially denied parole on February 23, 1995.[3] Petitioner appeared before the Board of Prison Terms (now the Board of Parole Hearings, the "Board") for his eighth parole consideration hearing on August 25, 2003.[4] As petitioner notes, the Board denied parole based on: (1) the facts of petitioner's commitment offense and prior criminal history; (2) unstable relationships; and (3) inadequate parole plans.

Petitioner filed an administrative appeal on November 5, 2003, which the Board denied on January 13, 2004. On June 9, 2004, petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court. The state court denied the petition on July 21, 2004, concluding that there was no evidence to support the Board's finding of unstable relationships, but nonetheless concluding that there was "some evidence" to support the Board's 2003 denial of parole. Both the California Court of Appeal and California Supreme Court denied subsequent habeas petitions challenging the 2003 parole decision without comment or citation.

///

///

---

[3] In his supplemental points and authorities, petitioner states that his initial parole hearing was on December 23, 1993. This date, however, is not consistent with petitioner's statement that he became eligible in 1995. The state court indicated that petitioner's first parole hearing was in 1995.

[4] Petitioner states that the August 28, 2003, hearing was the seventh time he had been considered for parole. The state court, however, stated: "The Board has refused to grant petitioner's parole during his initial parole suitability hearing on February 23, 1995, and seven subsequent hearings." Thus, according to the state court, the August 23, 2003, hearing was the eighth time petitioner had been considered for parole.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).

Under § 2254(d), federal habeas relief is available where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See id.; see also Wiggins v. Smith, 123 S.Ct. 252 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous

or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 123 S.Ct. at 1175. This is because ". . . the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III. DISCUSSION

Petitioner argues that the Board's 2003 decision was not based on "some evidence" under state law requirements for evidence may be considered as a basis for the denial of parole. He also claims that the continued reliance on immutable factors violates due process. Finally, petitioner argues that the Board essentially violated the terms of his plea agreement. In his answer, respondent raises the following arguments: (1) petitioner's claims are not cognizable because California inmates do not have a protected liberty interest in parole; (2) assuming there is a liberty interest in parole, the "some evidence" standard does not apply on federal habeas

review because it is not clearly established by the United States Supreme Court; (3) assuming the "some evidence" standard does not apply, due process only requires that prisoners be given an opportunity to be heard and notice of any adverse decision; and (4) assuming the "some evidence" standard applies, it is met in this case.

Many of the legal questions presented by this case have recently been addressed by the Ninth Circuit in Sass v. Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006). In particular, the Ninth Circuit held that California's parole statute does, in fact, create a federally cognizable liberty interest. See id. at 1127-28. On the merits, the court also rejected the argument that the "some evidence" standard does not apply. See id. at 1128-29. Under Superintendent v. Hill, 472 U.S. 445, 455 (1985), due process requires a prison disciplinary hearing decision be based on "some evidence" in the record as a whole which supports the decision. This standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. Additionally, this standard requires that the evidence underlying the Board's decision must have some indicia of reliability. See Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003).

In Sass, the Ninth Circuit also addressed the argument that the requirement of "some evidence" in the parole context has not been clearly established by the Supreme Court. The Ninth Circuit held:

> Hill's some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary." (citation omitted). Hill held that although this standard might be insufficient in other circumstances, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." (citation omitted). To hold that less than the some evidence standard is required would violate clearly established federal law because it would mean that a state could interfere with a liberty interest – that in parole – without support or in an otherwise arbitrary manner. We therefore reject the state's contention that the some evidence standard is not clearly established in the parole context.

Sass, 461 F.3d at 1129.

1  Therefore, this court has jurisdiction to review petitioner's claim and must apply the "some
2  evidence" standard on the merits.  See id.
3  　　　　In assessing whether the "some evidence" standard has been met, the court's
4  analysis is framed by the state's statutes and regulations governing parole suitability.  See Biggs,
5  334 F.3d at 915.  Thus, this court looks to California law to determine the findings that are
6  necessary to deem a prisoner unsuitable for parole and then reviews the record to determine
7  whether there is "some evidence" supporting the decision to deny parole.  Under California law,
8  an inmate is not suitable for parole if, in the judgment of the Board, the prisoner will pose an
9  unreasonable risk of danger to society if released.  See Cal. Code Regs., tit. 15 § 2402(a).  The
10 regulations set forth various circumstances which tend to show suitability and others which tend
11 to show unsuitability.  See Cal. Code Regs., tit 15 § 2402(c)-(d).
12 　　　　Under § 2402(c), circumstances tending to show unsuitability include: (1) the
13 facts of the commitment offense, where the offense was committed in an especially heinous,
14 atrocious, or cruel manner; (2) the prisoner's previous record of violence; (3) a history of
15 unstable relationships with others; (4) commission of sadistic sexual offenses; (5) a lengthy
16 history of severe mental problems related to the offense; and (6) serious misconduct while in
17 prison.  Circumstances tending to show suitability include: (1) lack of a juvenile record; (2)
18 reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) lack of
19 significant history of violent crimes; (5) realistic plans for release; and (6) participation in
20 institutional activities indicating an enhanced ability to function within the law upon release.  See
21 Cal. Code Regs., tit. 15 § 2402(d).  The denial of parole may be predicated on the commitment
22 offense only where the Board can point to factors beyond the minimum elements of the crime
23 that demonstrate that, at the time of the suitability hearing, the inmate will present a danger to
24 society if released.  See In re Dannenberg, 34 Cal.4th 1061, 1071 (2005).
25 / / /
26 / / /

It has been argued that immutable factors cannot constitute evidence sufficient to deny parole and that continued reliance solely on such factors ignores the goal of rehabilitation and violates due process. In Biggs, where the petitioner was challenging the first denial of parole based solely on the facts of the commitment offense, the Ninth Circuit concluded that the denial was based on some evidence – the facts of the commitment offense – even though other findings made by the Board in Biggs' case lacked evidentiary support. In dicta, however, the court acknowledged that, sometime in the future, the continued reliance on immutable factors could violate due process. See Biggs, 334 F.3d at 917. From this, it is clear that the Board may rely solely on immutable factors for the first denial of parole.

As to subsequent denials of parole and the continued reliance on immutable factors, the Ninth Circuit has not drawn any bright line. In Sass, where the petitioner was challenging the third denial of parole, the Ninth Circuit affirmed the denial of the habeas petition. See Sass, 461 F.3d at 1129. The court did not conclude that reliance on immutable factors (the facts of the commitment offense and the petitioner's prior criminal history) – even for a third time – violated due process. See id. The court held:

> In making a judgment call based on evidence of pre-conviction recidivism and the nature of the conviction offense, the Board cannot be categorized as acting arbitrarily. Here, the Board based its finding that Sass was unsuitable for parole on the gravity of his convicted offenses in combination with his prior offenses. These elements amount to some evidence. . . . Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.

Id.

Recently, in Irons v. Carey, ___ F.3d ___, 2007 WL 2027359 (9th Cir. July 14, 2007), the Ninth Circuit reversed the district court's grant of a habeas petition challenging the eighth denial of parole, concluding that the facts of the petitioner's commitment offense alone constituted some evidence of unsuitability under California law. The court in Irons noted that none of the Ninth Circuit's cases concluding that reliance solely on immutable factors to deny

parole involved inmates who had served the minimum terms of their sentences.  Specifically, the court observed:

> We note that in all the case since which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence.  Specifically, in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board.  Biggs, 334 F.3d at 912; Sass, 461 F.3d at 1125.  All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.
>
> Id. at *6.

As to the continued reliance solely on immutable factors, the court noted in dicta:

> Furthermore, we note that in Sass and in the case before us there was substantial evidence in the record demonstrating rehabilitation.  In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole.  We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes.
>
> Id.

From the foregoing, the court concludes that, where the challenged parole denial occurs before the petitioner has served the minimum term of his sentence, the continued reliance solely on immutable factors to deny parole for up to eight times does not violate due process.  As indicated above, the Ninth Circuit has left open the question of whether continued reliance solely on immutable factors where the prisoner has served the minimum term of his sentence violates due process.

///

///

1    Addressing the instant petition, the court observes that petitioner admits in his
2 supplemental points and authorities that the 2003 denial of parole was based, in part, on
3 inadequate parole plans.  Thus, this case does not involve continued reliance <u>solely</u> on immutable
4 factors.  Nor does this case implicate the <u>Irons</u> observation regarding denial of parole solely on
5 immutable factors after the prisoner had served the minimum term, which petitioner in this case
6 had by the time of the challenged parole denial in August 2003 (petitioner was sentenced in April
7 1986).  Setting aside the Board's reliance on immutable factors, and acknowledging the state
8 court's conclusion that there was no evidence to support the Board's finding of an unstable social
9 history, the question is whether the Board's finding of unsuitable parole plans is supported by
10 "some evidence."

11    As to petitioner's parole plans, the state court observed:

> Petitioner plans to live in Detroit if possible, or otherwise remain in California.  If paroled to Michigan, petitioner has arranged to move in with his brother, who has also offered petitioner a job as an electronic technician.  If he is paroled to California, petitioner's ex-wife has written a letter of support indicating she will re-marry him and move to Los Angeles.  However, petitioner['s] parole plan in California does not include a job offer, and it is uncertain[] whether he will live in Oakland or Los Angeles.

17 The state court concluded without analysis that the Board's finding of unsuitable parole plans
18 was supported by some evidence.  On the suitability of petitioner's parole plans, the Board
19 stated:

> . . . Parole plans are not as strong or as acceptable as they should be, and I'm going to talk to you about that. . . .  First of all, you know that you need to talk with your wife about a letter that is very specific, with you paroling to Oakland.  And it's always good to have dual parole plans.  And I don't know if you've even thought of looking into halfway houses in LA or in Oakland, but you need to have a very specific letter from her stating that you can live with her, and that she will assist you financially and whatever needs to be done. . . .  And I know that some Panels like for you to have dual parole plans, and you know, for your wife to be saying that she's going to locate to LA and for you to be there, it just isn't anything specific.  We just don't have anything really concrete right now on your parole plans.  So, if you can, you just need to do a whole lot of work on your parole plans and work plans this next year.

11

Petitioner argues that this finding is not based on substantial evidence because he has developed marketable skills that can be put to use upon release. See Cal. Code Regs., tit. 15 § 2402(d)(8). In particular, petitioner points to the welding certification and 10,000 hours experience in welding gained while in prison. The court does not agree that these facts undermine the Board's finding as to suitable parole plans. It is undisputed that petitioner's plans for release in California were not very specific. There was no firm commitment from his ex-wife as to where they would live and he had not demonstrated any job plans. Given the lack of job plans, the court finds that petitioner has not demonstrated skills that <u>can be put to use</u> in the context of an actual job offer. The court accepts that petitioner has developed marketable skills, but he has not shown that he can put them to use by demonstrating a job offer in the field of welding.

As noted above, the "some evidence" standard is minimal and designed to ensure that the Board's decision was not arbitrary. The court concludes that this standard has been met. The Board's determination that petitioner lacked specific parole plans was not arbitrary and provided some evidence to support denial of parole. Therefore, the state court's adjudication of petitioner's claim was neither contrary to nor an unreasonable application of the law.

Finally, the court addresses petitioner's argument that the continued denial of parole violates the terms of his plea agreement. Petitioner argues:

> The Board's conduct . . . violated the terms of Petitioner's plea bargain, under which the state was bound to consider his crime to be no more than a second degree murder, and to set his term of confinement accordingly.

This argument is unpersuasive.[5] The court does see how the Board's conduct has changed his sentence from anything but that consistent with his plea to second degree murder. The abstract of judgment reflects that petitioner was convicted of second degree murder. Based on that

---

[5] It would appear that petitioner concedes as much given that there is absolutely no discussion of this issue in the supplemental points and authorities filed by counsel.

conviction, petitioner was sentenced to 17 years to life in prison.  Under this sentence, petitioner could serve up to a life term and the Board's actions have done nothing to change that.  To the extent petitioner argues that his sentence is somehow disproportionate in violation of the Eighth Amendment, the time has long since passed in which petitioner can raise such a claim to this court.  Therefore, the state court's denial of this aspect of petitioner's claim was also neither contrary to nor an unreasonable application of the law.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 17, 2007.

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE